**UNION OIL COMPANY OF CALIFOR-NIA et al., Petitioners,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

Nos. 75–2891, 75–3110, 75–3126, 75–3127, 75–3150, 75–3151, 75–3174, 75–3226, 75–3227, 75–3235, 75–3236, 75–3291, 75–3292, 75–3301, 75–3302, 75–3311, 75–3365, 75–3366, 75–3374 and 75–3413.

United States Court of Appeals, Ninth Circuit.

June 2, 1976.

Rehearing and Rehearing In Banc Denied Nov. 1, 1976.

Platt Davis, III (argued), Vinson, Elkins, Searls, Connally & Smith, Washington, D.C., Patrick F. Timmons and Michael B. Silva (argued), Houston, Tex., Craig W.

Hulvey (argued), Washington, D.C., and Homer J. Penn (argued), Houston, Tex., for petitioners.

Robert Perdue (argued), and Allan Abbot Tuttle, Sol. (argued), Federal Power Commission, Washington, D.C., for respondent.

Before DUNIWAY, GOODWIN and WALLACE, Circuit Judges.

DUNIWAY, Circuit Judge:

These are petitions for review of Orders Nos. 526 and 526–A of the Federal Power Commission which would require all large natural gas producers to submit, on a new form, Form 40, detailed information about their natural gas reserves. Petitioners are producers of natural gas and other petroleum products who would be required to file Form 40 annually, and they challenge the validity of these orders on the grounds that (1) the Natural Gas Act does not provide authority for the collection of intrastate reserve data; and (2) the Commission acted arbitrarily and capriciously in making the orders. The producers also claim that the Commission's stated policy with respect to the confidentiality of data submitted on Form 40 does not adequately protect their proprietary interest in that data. While we reject the producers' first contention, we are not able to determine from the record now before us that the factual findings of the Commission are supported by evidence. In addition, we find the Commission's rule as to the public status of information to be submitted on Form 40 to be arbitrary and capricious. Consequently, we set the orders aside and remand the cases to the Commission for further proceedings.

## I. *The Facts.*

On April 15, 1974, the Commission issued a "Notice of Proposed Rulemaking," published at 39 Fed.Reg. 14233 (1974), stating that the Commission proposed to amend its General Rules by creating a requirement of an annual data filing on new Form 40 by every "natural gas company" and its regulated subsidiaries and affiliates. As originally proposed, Form 40 consisted of four schedules: schedule A required data related to proved reserves of natural gas for the reporting company; schedules B and B–1 required estimates of proved reserves on a "by field and by reservoir" basis; schedule C required data on the annual changes in proved reserves. Schedule B–1, which asked for data under hypothesized conditions, was subsequently withdrawn. The Commission stated that schedule A data would be placed in public files, while all other data would "be given confidential status . . . and left in the Commission files until further ordered by the Commission." [R. 404] However, it also ruled that all data would be available to Congress and other federal agencies through authorized procedures.

Pursuant to 5 U.S.C. § 553, the Commission accepted written comments from over 60 natural gas producers who unanimously objected to Form 40 on the ground that it would impose a severe economic burden on them to produce and furnish the required data because data on a reservoir basis were not readily available, and they did not keep records on that basis. A large number also objected on the other grounds upon which these petitions for review are based. Subsequently, at the request of the responding producers, the Commission conducted an oral hearing, called a "conference," to receive additional comments. Over 120 persons representing a cross-section of the natural gas industry attended and expressed objections to the proposed Form 40. The written comments, the transcript of the oral statements made at the hearing, and the majority and dissenting positions of the Commission comprise the full record before us.

Although the majority decision of the Commission gives detailed reasons supporting its authority to gather intrastate data and its right to follow the suggested guidelines on confidentiality, the various factual claims of the producers concerning the burden that Form 40 would impose upon them and the Commission's regulatory need for the data are treated cursorily. The majority opinion claims that the required data are

available because the same information must be submitted to the Internal Revenue Service under existing tax regulations. In addition, the majority claims that the Commission is not obligated to consider the burden on the industry because Congress has delegated that job to the General Accounting Office. The Commission additionally rejects the producers' argument that necessary data could be obtained from other federal agencies on the ground that the producers did not show that the information possessed by the other agencies would be useful for the Commission's purposes, that such data would be obtainable by the Commission, or that such data were not protected by confidentiality. Finally, the majority opinion asserts that the Commission does need the data in order to conduct company audits necessary to determine appropriate interstate natural gas rates. No evidence other than these assertions appears in the record to support the factual findings to which the producers now object.

Thus, by a three to two vote, the Commission issued Order No. 526 on February 25, 1974, adopting Form 40 substantially as proposed. Form 40 was then forwarded to the General Accounting Office for review as required by 44 U.S.C. § 3512. On April 11, 1974, the GAO informed the Commission that it was suspending review because it was not able to conclude that Form 40 did not place undue burden on the industry or involve unnecessary duplication. Despite additional efforts by the Commission to persuade the GAO otherwise, on July 1, GAO sent a letter to the Commission withholding certification of Form 40 unless duplication between Form 40 and Commission Forms 15 and 64 were eliminated. It also recommended that the Commission make further studies of the extent of the burden that Form 40 would impose on the industry in general and on small producers in particular.

After a number of *ex parte* meetings between Commission and GAO staff members, the Commission agreed to exempt from the requirements of Form 40 all producers of less than 250,000 million cubic feet of natural gas per annum, all owners of less than 20 billion cubic feet of natural gas reserves, and all natural gas companies currently required to file Commission Form 15. The GAO then granted temporary certification by letter dated August 11, 1975, but it still expressed concern about duplication, industry burden, and the Commission's need for and use of the data required by Form 40. It therefore asked the Commission to resubmit Form 40 after another year with additional information on these concerns.

Armed with this certification, the FPC issued Order No. 526-A, making Form 40 effective and denying a rehearing. The producers then filed petitions for review in numerous Courts of Appeals, all of which have been consolidated before us. Pending our decision, we have issued a partial stay of Orders 526 and 526-A, limiting the Commission to requiring information in the form currently held by the producers, and also requiring that any data submitted be treated as confidential and not released without further order of this court.

## II. *The Jurisdictional Issue.*

■ Although only natural gas companies which engage in some interstate activities are required to file Form 40, they are required to disclose therein data relating to intrastate as well as interstate activity. This demand for intrastate data the producers claim to be outside the Commission's jurisdiction which is limited in the Natural Gas Act, [the Act] § 1, 15 U.S.C. § 717, to interstate commerce in natural gas. This claim is without merit.

Although the Commission's authority to regulate and set rates is limited to interstate transportation of natural gas, § 14(a) of the Act, 15 U.S.C. § 717m(a) authorizes the Commission to

> investigate any facts, conditions, practices, or matters which it may find necessary or proper in order to determine whether any person has violated or is about to violate any provision of this chapter or any rule, regulation, or order thereunder, or to aid in the enforcement

of the provisions of this chapter or in prescribing rules or regulations thereunder, or in obtaining information to serve as a basis for recommending further legislation to the Congress.

Thus, while the regulatory and rate setting jurisdiction of the Commission is narrowly defined, Congress has given it broad authority to gather data which would in any rational way aid it in the performance of its statutory function.

The Commission argues that intrastate data are necessary for its determination of proper policies and rates with respect to interstate commerce in natural gas. We agree. As the Fifth Circuit has noted:

> Interstate rates must be fixed with a clear view of the prices and terms prevailing in the intrastate market. The two markets compete for natural gas which is in short supply. Those regulating the public interstate market must know the private intrastate price structure if their regulations are to function effectively.
>
> *Continental Oil Co. v. FPC,* 5 Cir., 1975, 519 F.2d 31, 33;
>
> *See also* section 5(b) of the Act, 15 U.S.C. § 717d(b).

We find that requiring intrastate data from companies whose activities place them under the jurisdiction of the Commission is well within the authority granted by § 717m(a) to gather relevant data.

The producers, however, argue that because the Commission suggested to Congress that it expand the Commission's investigatory powers under § 717m to the limits of its powers to investigate under the Federal Power Act, 16 U.S.C. § 825j, the Commission has admitted that it lacks the kind of broad fact finding authority that it proposes to exercise in Form 40. This is not the case. The Federal Power Act, § 825j, allows the Commission to gather data about

intrastate activities from companies engaged solely in intrastate activities, while the Natural Gas Act limits the gathering of intrastate data to gathering it from companies falling under the Commission's jurisdiction. It is this discrepancy which the Commission has sought to eliminate, and Congress' failure to expand the reach of § 717m in no way diminishes the Commission's authority under that section to require the data asked for on Form 40. *See Continental Oil Co. v. FPC, supra,* 519 F.2d at 34.

### III. *The Validity of the Reporting Requirements.*

### A. *The Standard of Review.*

The proceeding leading to the entry of Orders 526 and 526–A was begun by the publication, pursuant to 5 U.S.C. § 553, of a Notice of Proposed Rulemaking. Authority for the proposed new rule was stated to be sections 8, 10, 14, and 16 of the Natural Gas Act (15 U.S.C. §§ 717g, 717i, 717m, and 717o). The proceeding was a rulemaking proceeding, not an adjudicative one. The authority of the Commission to obtain information and to require reports is broad.[1] But none of the sections cited specifies the procedure to be used in deciding to exercise that authority when the Commission desires to exercise it by rule or regulation.

In fact, the proceedings were conducted in the manner prescribed in the Administrative Procedure Act. Presumably the Commission felt, properly, we think, that its procedure in this case was governed by the "Rulemaking" section of that Act, 5 U.S.C. § 553. That Act distinguishes between rulemaking (§ 553) and adjudications (§ 554). The former does not require a trial type hearing; the latter normally does. (See § 556.) Because the Natural Gas Act does not require a trial type hearing for

---

1. Most in point is § 10(a) (15 U.S.C. § 717i(a)):

   Every natural-gas company shall file with the Commission such annual and other periodic or special reports as the Commission may by rules and regulations or order prescribe as necessary or appropriate to assist the Commission in the proper administration of this chapter. The Commission may prescribe the manner and form in which such reports shall be made, and require from such natural-gas companies specific answers to all questions upon which the Commission may need information.

rulemaking, the Administrative Procedure Act does not. (See 5 U.S.C. § 553(c).)

The record compiled in a rulemaking proceeding conducted under § 553 is not the type of record that courts of appeals are accustomed to have before them in reviewing decisions of trial courts or of administrative agencies. We tend to consider such less formal records as somehow suspect, because the evidence has not been presented under adversary type proceedings, and so has not received the rigorous testing by confrontation and cross-examination that we usually demand as a basis for fact finding. In this case, for example, most of the evidence consists of *ex parte* written statements, some verified on oath, some not, and of comparable oral comments presented at a conference held on August 14–15, 1974. At the conference, the parties making the statements were asked some questions, but were not sworn and not cross-examined. Such records tend to make courts nervous, even though the proceeding does comply with § 553.[2]

The Administrative Procedure Act attempts to draw a clear line between rulemaking and adjudication, and to make the words "rule," "rulemaking," "order," and "adjudication" into words of art, implementing the distinction. See 5 U.S.C. § 551(4), (5), (6), and (7). There is also an attempt to apply different standards of review to the two types of proceedings. See 5 U.S.C. § 706, making the "substantial evidence" test applicable to adjudicative proceedings under §§ 556 and 557, and thus, by implication, not applicable to a § 553 proceeding.

The Natural Gas Act, however, does not attempt to draw such a clear line. It refers more or less indiscriminately to "rules," "regulations," and "orders."[3] It provides for court review at the behest of "any party to a proceeding" under the Act who is "aggrieved by an order issued by the Commission in such proceeding" (§ 19(b), 15 U.S.C. § 717r(b); it provides that "[t]he finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive" (id.). And as we have seen, § 10(a) expressly provides that periodic reports, such as Form 40, can be prescribed "by rules and regulations or order."

Thus we are reviewing, under authority of the Natural Gas Act, an order adopting and effectuating a rule or regulation as authorized under that Act, in a proceeding prescribed under the Administrative Procedure Act, but under a standard embodied in the Natural Gas Act.

Under comparable circumstances some courts have read the substantial evidence test as the approximate equivalent of the arbitrary and capricious test. *Associated Industries of N.Y.S. v. U.S. Dept. of Labor,* 2 Cir., 1973, 487 F.2d 342, 347–50. Under this standard of review, the court only requires that the agency offer "*some* reasoned explanation." *Id.* at 354. This seems to indicate that no evidentiary record is required to support the factual premises of the agency if the rule is accompanied by a reasonable statement of why the agency

**2.** Comments on the problem presented are numerous and diverse. *See* Wright, *The Courts and the Rulemaking Process: The Limits of Judicial Review,* 59 Cornell L.Rev. 375 (1974); Note, *Judicial Review of the Facts in Informal Rulemaking: A Proposed Standard,* 84 Yale L.J. 1750, 1756 (1975); Pedersen, *Formal Records and Informal Rulemaking,* 85 Yale L.J. 38, 46–49 (1975); Hamilton, *Procedures for the Adoption of Rules of General Applicability: The Need for Procedural Innovation in Administrative Rulemaking,* 60 Cal.L.Rev. 1276, 1278–1313 (1972); Verkuil, *Judicial Review of Informal Rulemaking,* 60 Va.L.Rev. 185 (1974).

**3.** As to "order," see § 717(b) (export or import of natural gas); § 717c, (d) and (e) (changes in rates or charges); § 717d(a) (fixing rates and charges); § 717f(a) (extending or improving facilities); § 717g(b) and (c) (requiring a natural gas company to furnish information); § 717h(a) (fixing rates of depreciation). As to "rules" or "regulations," see § 717g(a) (prescribing accounts, records, etc.); § 717h(b) (same); § 717i(a) (requiring annual and other reports); § 717o (rulemaking and ordering power in general). As to instances where the mode of exercise of power is not stated, see § 717d(b) (investigation of costs where Commission cannot set rates); § 717f(d) (permission to abandon facilities or services; § 717f(c)–(f) (issuance of certificates of public convenience and necessity).

finds the facts to be as it finds them to be. See also *Phillips Petroleum v. FPC,* 10 Cir., 1973, 475 F.2d 842.

■ We think, however, that Congress expected greater scrutiny when the enabling statute contains a substantial evidence test. The mere statement of a rationale by the agency, without any evidentiary support, does not provide the reviewing court with a record upon which it can determine whether the factual findings are supported by substantial evidence. As Judge Leventhal has noted in remanding an order to the agency to compile a more complete record, "[i]t is not consonant with the purpose of a rule-making proceeding to promulgate rules on the basis of inadequate data, or on data that . . . is [sic] known only to the agency." *Portland Cement Assn. v. Ruckelshaus,* 1973, 158 U.S.App.D.C. 308, 486 F.2d 375, 393.

We believe that the dilemma between the time and cost saving advantages of informal rulemaking and the need for an adequate record on review can be avoided if we require that a "notice and comment" record permitted under § 553, while it need not be the formal adjudicative record required under §§ 556 and 557, must contain sufficient factual data, however informally presented, to provide substantial evidentiary support for the action taken. If the Commission does not have the needed data, section 14 of the Act, 15 U.S.C. § 717m, gives it ample tools with which to obtain them.

As the District of Columbia Circuit noted in adopting a similar approach:

There is no reason . . . to conclude that Congress in establishing these limits intended to preclude all the possible formulations that might lie in between the two extremes.

*Mobil Oil Corp. v. FPC,* 1973, 157 U.S. App.D.C. 235, 483 F.2d 1238, 1253. Different issues may lend themselves to varying types of procedures, and "the Commission should 'realistically tailor the proceedings to fit the issues before it.'" *Id.* at 1252.

In this case, we look to the record to see whether it contains substantial evidence which supports a conclusion that the reporting burden on the producers is outweighed by the Commission's need to have reservoir data. While a detailed explanation might be sufficient to establish that there is need for the data, there must, at least in the face of objection, be evidence that the data are reasonably available to the producers. This does not mean that the Commission must have conducted an adjudicative hearing, or, for that matter, any oral hearing. It only means that before the Commission can conclude that its need outweighs the producers' burden, in the face of a strong contrary showing, it must show that the judgment is reasonably supported by substantial evidence which appears somewhere in the record.

The foregoing, we think, is consistent with the views expressed by the Supreme Court in the *Permian Basin Area Rate Cases,* 1968, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312. There the Commission in attempting to carry out what is perhaps its most basic function, rate making, by means of individual adjudicative procedures, had gotten hopelessly bogged down. It then took a different approach—a rulemaking type of procedure—looking toward the establishment of area maximum rates. In reviewing the orders that resulted from the proceeding, the Court said (p. 767, 88 S.Ct. p. 1360):

Section 19(b) of the Natural Gas Act provides without qualification that the "finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." More important, we have heretofore emphasized that Congress has entrusted the regulation of the natural gas industry to the informed judgment of the Commission, and not to the preferences of reviewing courts. A presumption of validity therefore attaches to each exercise of the Commission's expertise, and those who would overturn the Commission's judgment undertake "the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences." *FPC v. Hope Natural*

*Gas Co., supra,* [320 U.S. 591], at 602 [64 S.Ct. 281, at 288, 88 L.Ed. 333].

We apply the same principles here.

B. *The Sufficiency of the Evidence.*

■ The producers claim that the Commission's adoption of Form 40 is arbitrary and capricious because it places a severe burden on natural gas producers, because it is duplicative, the necessary information being available from other agencies, and because the Commission has no regulatory need for the data demanded. After summary consideration of each of these contentions, the Commission concluded by a three to two vote:

We find that any burden that may be imposed upon the natural gas industry as the result of our adoption of FPC Form No. 40 is substantially outweighed by our need to know the status of the nation's proved reserves of natural gas.
[R. 587]

As to this, there was a vigorous dissent.

The above-quoted decision of the Commission is a policy decision, and, as such, may only be overturned on review if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, under 15 U.S.C. § 717r(b), that policy judgment may only pass this test if the factual premises upon which it rests are supported by substantial evidence, 15 U.S.C. § 717r(b). As the District of Columbia Circuit has noted, "the object of review is to determine whether a reasoned conclusion from the record as a whole could support the premise on which the Commission's action rests." *City of Chicago v. FPC,* 1971, 147 U.S.App. D.C. 312, 458 F.2d 731, 744.

Our review of the record convinces us that the factual premises upon which the Commission's decision rests are not supported by substantial evidence. There is no evidence from which the FPC could conclude that the data required on Form 40 on a by reservoir basis were or could easily become available. The only evidence is to the contrary. There is no evidence, but only assertion, that the Commission has a

regulatory need for the data in the form required, and none upon which to base a finding as to whether the necessary data were or were not available from other agencies of the federal government.

Although there was no evidence before the Commission to contradict the unanimous statements of the producers that natural gas reserve data are not kept by them on a "by reservoir" basis and that such data would be extraordinarily expensive to obtain, the Commission majority found that "[t]here is little doubt that the information required to be submitted on FPC Form No. 40 is possessed by the respondents." [R. 574] The sole basis for this factual conclusion is that the companies are required annually to report the same data to the Internal Revenue Service under the Tax Regulations, 26 C.F.R. § 1.611–2(g) (1975). This assertion is simply wrong. The portion of the regulation on which the Commission relies deals with information "as required . . . with respect to each such mineral *property* or improvement. . . ." The word "property" is then defined in 26 C.F.R. § 1.614–a as "each separate interest owned by the taxpayer." Thus, the data required by the I.R.S. are based on ownership, lease, or working interests, not on a reservoir basis as the Commission requires in Form 40. The Commission's factual determination that the data required are available is not supported by any evidence, much less by substantial evidence.

The producers do not claim that the Commission has no regulatory need for reserve data; they only claim that the Commission does not need those data on a reservoir basis. The Commission disagrees, but again without any evidence in the record to contradict the claim. The only statement in its order that the Commission makes about its regulatory need for reservoir data is too general to be helpful. Therein the majority states:

Furthermore the submission of company held reserves information without the submission of individual reservoir data . . . would detract from the reliability of the submissions and would materi-

ally impair the Staff's ability to efficiently audit the underlying basis for the company wide estimates without a painstaking investigation of company records. [R. 576]

There is no explanation of why data submitted on a field, lease interest, or any other commonly recorded and reported basis are less reliable without accompanying data on a reservoir basis. Likewise, no reasons are given which would explain why "by reservoir" data are needed in the auditing process. While we can conceive of possible explanations for such statements, an agency's findings "must be explained, not merely explainable." *Environmental Defense Fund v. EPA,* 1972, 150 U.S.App.D.C. 348, 465 F.2d 528, 539. *And see Securities and Exchange Comm. v. Chenery,* 1943, 318 U.S. 80, 95, 63 S.Ct. 454, 87 L.Ed. 626; Friendly, *Chenery Revisited: Reflections on Reversal and Remand of Administrative Orders,* 1969, Duke L.J. 199. Again, the Commission's factual finding is not supported by substantial evidence.

Finally, as for the producers' claim that all necessary data are available from other federal agencies, no evidence on the record suggests, nor does the FPC claim, that other agencies do not have substantial natural gas reserve data. The Commission majority's only response to this claim is that:

> It has not been shown and it cannot be shown that such data will be useful to this Commission nor that such data will ever be available to us. Information collected by an agency for one regulatory purpose under one statute on a confidential basis could not in fairness to the parties submitting such data be disclosed to the public or other agencies without some hearing with respect to the disclosure of such data and findings that public disclosure overrides private needs for non-disclosure of proprietary data. [R. 576]

That the Commission should rest its rejection of the producers' claim of administrative duplication primarily on the grounds of its inability to get such "confidential" data from the other agencies is remarkable, considering the Commission's own position on the public availability of information submitted on Form 40. It is also difficult to accept the notion that "fairness" to parties submitting data to other agencies cuts off Commission access to the data when the parties for whom the Commission purports to be so concerned are the same parties who are asking that the Commission seek that information from the other agencies. We are also unable to find any evidence in the record on the basis of which it could be found that data obtained from other agencies would be of no use to the Commission.

Once again, the Commission's factual finding is not supported by substantial evidence. Moreover, the Commission has flatly disregarded the Congressional injunction in Section 11(c) of the Act (15 U.S.C. § 717j(c)):

> In carrying out the purposes of this chapter, the Commission shall, so far as practicable, avail itself of the services, records, reports, and information of the executive departments and other agencies of the Government, and the President may, from time to time, direct that such services and facilities be made available to the Commission.

The Commission attempts to avoid the issues raised by the producers by arguing that it is the General Accounting Office, not the Commission, that must "weigh the reporting burden against the public need for the requested data." [R. 576] While it is true that 44 U.S.C. § 3512 orders the GAO to review the relative interests whenever an administrative agency attempts to collect information from an industry, subsection (d) of that section states that "the independent regulatory agency shall make the final determination as to the necessity of the information in carrying out its statutory responsibilities and whether to collect such information." Thus it is the Commission, not the GAO, that has final responsibility.

The Supreme Court has held that even though one agency may have primary responsibility for making certain findings, other agencies must also assume such re-

sponsibility when the finding relates to their specific responsibilities. *See Gulf States Utilities Co. v. FPC*, 1973, 411 U.S. 747, 757–62, 93 S.Ct. 1870, 36 L.Ed.2d 635 (holding that the Commission must consider antitrust policies); *Udall v. FPC*, 1967, 387 U.S. 428, 87 S.Ct. 1712, 18 L.Ed.2d 869 (holding that the Commission must consider all adverse environmental impacts of its rulings). Thus, the Commission cannot here avoid its responsibility for basing its policies in supportable fact.

We conclude that the factual premises upon which the Commission's orders rest are not supported by substantial evidence. The Commission's brief is full of factual statements and rationalizations that do not appear anywhere in the record. This will not do. We review the Commission's decision, not its counsel's post hoc rationalizations.

### IV. *The Confidentiality Issue.*

■ Orders Nos. 526 and 526–A not only adopt and implement Form 40, they also announce a rule with respect to the confidential status to be given information submitted on Form 40. The Commission indicated that all schedule A data would be placed on public files while schedules B and C data would be kept confidential unless the Commission orders otherwise. In substance, this rule recognizes no legal restraint on the Commission's authority to disclose all data submitted on Form 40.

The producers argue that because much of their reserve data is information obtained at great cost, and because its disclosure would cause substantial competitive harm, to place such data on public record is a violation of the Freedom of Information Act, 5 U.S.C. § 552.[4]

The Freedom of Information Act exempts from its provisions for mandatory disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5

U.S.C. § 552(b)(4). The Supreme Court has defined "trade secret" as it applies to the patent laws as a "compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Kewanee Oil Co. v. Bicron Corp.*, 1974, 416 U.S. 470, 474, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315 (citing The Restatement of Torts § 757, comment b (1939)). The kind of natural gas reserve data required by Form 40 seems to fit this definition. The Commission itself has recognized this in *Amerada Hess Corp.*, 1973, 50 F.P.C. 1048, 1050, where it noted that "a natural gas company's reserve data, much like a patent or *trade secret,* constitutes a valuable and closely guarded asset." There can be little doubt that much of the information required by Form 40 is the type of data about which Congress was concerned in enacting the exemption from § 552.

The Commission claims that this exemption from the Freedom of Information Act is merely permissive in that it does not require an agency to disclose such trade secrets; that the Congress never intended that this section would require agencies to keep trade secrets from the public. While the literal language of § 552 lends itself to this interpretation, the Congressional purpose in enacting the exemption was "to protect from disclosure certain information which is highly valuable to several important industries and which should be kept confidential when it is contained in government records." Sen.Rep.No.248, 90th Cong., 1st Sess., p. 2 (1967). Accordingly, after a thorough discussion of the legislative history of the Act, the District of Columbia Circuit noted that one of the interests to be served by the exemption is that of persons supplying data in maintaining their secrecy. *National Parks and Conservation Ass'n v. Morton*, 1974, 162 U.S.App. D.C. 223, 498 F.2d 765. The court explicitly noted, by quoting from Senate Judiciary Committee Hearings:

---

4. We do not consider the producers' additional claim that such disclosure is also a "taking" within the meaning of the Fifth Amendment.

Again, not only as a matter of fairness, but *as a matter of right,* and as a matter basic to our free enterprise system, private business information should be afforded appropriate protection, at least from competitors.

*Id.* at 769 (emphasis added).

If businesses are entitled to such protection under the statute as a matter of right, that right must be upheld even in cases where the agency fails to assert it on behalf of the private suppliers of data. Thus, the Fifth Circuit has held that confidential information may not be released because of the exemption in § 552. *Continental Oil Co. v. FPC, supra,* 519 F.2d at 35–36.

■ In addition to holding that the Freedom of Information Act exemptions mandate that the data submitted on Form 40 be kept confidential, we also find the Commission's rule making such information a matter of public record, or confidential subject to the Commission's will, to be arbitrary and capricious under traditional review of agency rulemaking. 5 U.S.C. § 706(2)(A).

The Commission's justification for publicly revealing the submitted data is that the public has right to know the information upon which agency regulations and rates are based. Certainly, there is a public interest in such disclosure. Here, however, the Commission has adopted a rule for the potentially damaging disclosure of information which fails to consider the degree of harm such disclosure would cause to the reporting companies, whether or not the data revealed in fact played any part in an agency decision, or whether or not the data could satisfy the public's need to know if presented in an alternative form which avoided any harm to the industry. We are not told why aggregate data which do not identify individual producers or specific reserve information of individual producers could not satisfy the public's need. In short, the Commission makes data available to the public without any regard for the harm that this would cause or the need that would be served. Such a rule is without any rational basis and must be found to be arbitrary and capricious.

In the event that information disclosed with potentially damaging specificity would advance the public interest, the Commission should take appropriate precautions to determine (1) whether the information is such that it is entitled to absolute protection under § 552, and (2) if not, whether the balance of interests in the specific case are such as to justify disclosure. Any broad rule of disclosure of trade secrets such as that embodied in Orders 526 and 526–A which fails to consider such matters is arbitrary and capricious.

## V. *Conclusion.*

The orders adopting and implementing Form 40 are set aside, and the cases are remanded to the Commission for such further proceedings as it may elect to take, consistent with this opinion.

## ON PETITION FOR REHEARING

The Commission seeks a rehearing, and suggests the appropriateness of a rehearing in banc. Its petition "is addressed solely to the Court's holding that trade secret material exempt from the mandatory disclosure provisions of the Freedom of Information Act (FOIC) is entitled to 'absolute protection' against disclosure." (Petition, p. 1) The Commission argues that such a holding is both premature and erroneous. We agree that, whether or not the foregoing is an accurate description of our holding, the holding is premature. We therefore leave to another day the question of whether, and if so, to what extent 5 U.S.C. § 552 may confer on the producers a right, absolute or otherwise, enforcible against the Commission, to prevent disclosure of information such as is called for a Schedules B and C. We withdraw what we said in the fourth and fifth paragraphs of Part IV of our opinion, filed on June 2, 1976. We express no view as to whether what we there said is right or wrong.

We also withdraw any implication that the portion of Order 526 that would make Schedule A data public may be invalid. That part of the order is not attacked by the producers.

Our view that exercise by the Commission of unfettered discretion to make public the data required by Schedules B and C is arbitrary and capricious is strengthened by the decisions in *Charles River Park "A," Inc. v. Dep't of H.U.D.*, 1975, 171 U.S. App.D.C. 286, 519 F.2d 935, and *Pennzoil v. F.P.C.*, 5 Cir., 1976, 534 F.2d 627, cited by the Commission in its petition as supporting its construction of § 552. The Commission states that it is its practice not to release such data without giving notice to the parties. However, we find no regulation of the Commission to that effect, or committing the Commission to that practice, and the order under review makes no such commitment. The Commission merely stated that such data would be "given confidential status . . . and left in the Commission files until further ordered by the Commission." On its face, this is a reservation of unfettered discretion. As the cited cases show, the producers are entitled to a hearing and a reasoned decision weighing their interest and that of the public before the Commission permits the release of such data, if it is to be released at all. Moreover, these cases make it clear that 5 U.S.C. § 552 and 18 U.S.C. § 1905 are relevant to the manner in which the Commission's discretion is to be exercised.

The petition for a rehearing is denied. The suggestion of the appropriateness of a rehearing in banc has been transmitted to all judges of the court who are in regular active service, and no such judge has requested a vote on the suggestion. Rule 35(b) F.R.App.P. The suggestion of the appropriateness of a rehearing in banc is rejected.