**Alexis BLACK, Brian Michaels, Barry Adams, Carla Newbre, John Johnson, and Susan Bernstein, Plaintiffs,**

v.

**Russel ARTHUR, in his official capacity as Special Agent Law Enforcement Officer of the Forest Service of the United States Department of Agriculture; John Carpenter, in his official capacity as Special Agent Law Enforcement Officer of the Forest Service of the United States Department of Agriculture; Forest Service of the United States Department of Agriculture, Defendants.**

**Civil No. 97–1798–HA.**

United States District Court, D. Oregon.

Aug. 25, 1998.

---

Marianne G. Dugan, Western Environmental Law Center, Eugene, OR, Brian L. Michaels, Eugene, OR, Reed Lee, JD Obenger & Assoc., Chicago, IL, for Alexis Black, Carla Newbre, John Johnson, Susan Bernstein.

Brian Micheals, Eugene, OR, pro se.

Brian Micheals, Eugene, OR, for Barry Adams.

James L. Sutherland, Asst. U.S. Atty., Eugene, OR, Thomas W. Millet, U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, D. James Greiner, U.S. Dept. of Justice, Civil Division–Federal Programs Branch, Washington, DC, for Russell Arthur, John Carpenter, United States Forest Service.

## OPINION AND ORDER

HAGGERTY, District Judge.

### I. INTRODUCTION

Plaintiffs filed this case on December 18, 1997, challenging the U.S. Forest Service noncommercial group use regulation. On May 11, 1998, defendants moved to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon review of the complaint and the parties' briefs, this court grants defendants' motion to dismiss for the reasons set forth below.

### II. BACKGROUND

The present case stems from a 1997 "Annual Rainbow Family Gathering" in the Ochoco National Forest in central Oregon. Before the gathering, a member of the Rainbow Family applied for a special use permit, but no member would sign the permit on behalf of the Rainbow Family. As a result, at the gathering, Forest Service officials either cited or threatened to cite plaintiffs for violation of the noncommercial group use regulation because the special use permit was not signed. Plaintiffs allege that they intend to continue attending Rainbow Family Gatherings in the future, and fear further citation or arrest based on the requirement of the noncommercial group use regulation that special use permits be signed by a representative of the Rainbow Family. Complaint ¶ 6–11.

Plaintiffs in this case have attended Rainbow Family Gatherings for 15–25 years. The Rainbow Family is an unincorporated, loosely-structured group of individuals that regularly gathers in undeveloped sites in National Forests to "pray for peace, discuss environmental and other contemporary political and social issues, and exchange, develop express and demonstrate their ideas and views." Complaint ¶ 15. Annual gatherings have occurred in different National Forests on and around July 4 since 1972. These gatherings draw more than 20,000 participants and last for a month or more. Smaller regional gatherings take place throughout the year in National Forests across the country. Complaint ¶ 16; *see also* USDA, Final Rule, *Land Uses and Prohibitions*, 60 Fed. Reg. 45,258, 45,262 (Aug. 30, 1995) ("*Final Rule*").

Prior to the gatherings, Rainbow Family members "contact[ ] local business, civic, and community organizations ... to prepare for the gathering, help to provide for needs of gatherers, help to prevent adverse impacts on the surrounding communities, and help to promote understanding of gatherings on the part of the people living or working in the area," as well as meet "with local resident, civic, religious, and business groups to facilitate a more friendly environment." Complaint ¶¶ 9, 11.

At the gatherings, participants meet in central locations to pray and discuss common interests. All services are provided free of charge, but donations are accepted. Participants camp in tents and vehicles, construct numerous pit latrines and trash areas, and provide food from a central kitchen area. Sanitation is a major concern because all activities take place in undeveloped wilderness far from electricity, waste disposal facilities, reliable water sources, and medical facilities.

After the gatherings, several Rainbow Family members remain on site to clean-up the area and return it to its natural state. *Final Rule* at 45,263–264. However, not all gatherings have resulted in perfect restoration. Improperly closed latrines, eroded and compacted soil, destruction of vegetation, and litter have been problems at previous gatherings. *Id.*

Plaintiffs in this case challenge the Forest Service regulations that govern "special uses" of National Forest System lands by noncommercial groups of 75 or more people.

36 C.F.R. §§ 251.50, 251.51, 251.54, 251.56, 251.60, and 261.10. Special uses include any activities besides logging, mining, or grazing. 36 C.F.R. § 251.50(a). Any person wishing to engage in a special use must first obtain a permit from the Forest Service. Any violation of the special use permitting regulation may result in a fine of up to $500 or imprisonment of up to 6 months or both. 36 C.F.R. §§ 261.1b, 261.10(k).

"Noncommercial group use" is defined as any activity conducted on National Forest Service lands involving a group of 75 or more people, either as participants or spectators, in which (a) no entry or participation fee is charged, and (b) the primary purpose of the activity is not the sale of a good or service. 36 C.F.R. §§ 251.51, 251.54. To apply for a noncommercial group use permit, the applicant must provide the following: (1) the applicant's name and mailing address (if the applicant is an organization, the name and individual authorized to receive notice of actions regarding the application); (2) a description of the proposed activity; (3) the location and a description of the National Forest System lands and facilities the applicant desires to use; (4) an estimate of the number of participants and spectators; (5) the starting and ending dates and the time of the activity; and (6) the name of a person 21 years of age or older who will sign the special use authorization on behalf of the applicant. 36 C.F.R. §§ 251.54(e)(1) and (e)(2)(i)(A–E).

Specifically, plaintiffs raise five claims in their complaint regarding the noncommercial group use regulation: (1) it does not apply to Rainbow Family Gatherings because the Rainbow Family does not fit within the regulatory term "group;" (2) it fails the First Amendment test for time, place, or manner regulations; (3) it fails the First Amendment test for prior restraints upon expression and religious worship; (4) it fails the First Amendment strict scrutiny test, which is necessary because the Forest Service's motive for adopting the regulation was animus toward the Rainbow Family; and (5) it was promulgated in violation of the notice and comment provision of the Administrative Procedure Act ("APA"). Under claims 2, 3, and 4, plaintiffs particularly attack the con-stitutionality of the signature requirement. 36 C.F.R. § 251.54(e)(2)(i)(E).

## III. STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted is subject to a stringent standard of review. The appropriate standard for deciding to dismiss a claim is whether "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986) quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, the review is limited to the complaint and all allegations of material fact are taken as true and viewed in the light most favorable to the nonmoving party. *Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 737 (9th Cir.1987). The issue, however, is not whether the pleading party will ultimately prevail, but whether that party is entitled to offer evidence in support of its claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## IV. ANALYSIS

■ Before proceeding with the merits of the motion to dismiss, the court will address plaintiffs' request to convert this motion to dismiss into one for summary judgment. Motions to dismiss are converted to motions for summary judgment when "matters outside the pleadings are presented to and not excluded by the court." Fed.R.Civ.P. 12(b). However, there are several exceptions to that general rule. For example, courts are allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation, without converting a motion to dismiss into a motion for summary judgment. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir.1988); *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir.1953). In this case, defendants refer to the preamble to the Final Rule (*Final Rule*, 60 Fed.Reg. 45,258 (Aug. 30, 1995)) and certain documents in prior district court litigation.

■ Pursuant to Federal Rule of Evidence 201, this court takes judicial notice of the preamble to the Final Rule because it is the record of an administrative body that contains relevant information on the background and purpose of the challenged regulation. However, this court excludes reference to the documents from prior litigation because they are not a basis of res judicata for these parties. Because this court will consider only the complaint and matters of public record in resolving this motion to dismiss, it need not be converted to a motion for summary judgment.

## A. "Group use"

■ The Forest Service's special use regulation does not require a permit for noncommercial use of National Forest System lands unless a "group use" is involved. 36 C.F.R. § 251.50(c)(3). "Group use" is defined as "an activity conducted on National Forest System lands that involves a group of 75 or more people, either as participants or spectators." 36 C.F.R. § 251.51.

Plaintiffs allege in their complaint that the noncommercial group use regulation does not apply to Rainbow Gatherings because the Rainbow Family is not a "group" as that term is used in the regulation. Plaintiffs claim that this court should narrowly construe the meaning of "group." The first basis for this claim is that the term "group" in the definition of "group use" must have a meaning different than its common, broad meaning in order to have any meaning at all. Such a broad meaning of "group" would reduce the definition to nothing more than "75 or more people, either as participants or spectators" and render the term "group" meaningless in the definition. Therefore, plaintiffs argue that "group" means "something more than" a collection of 75 or more people, either as participants or spectators.

Second, plaintiffs claim that the noncommercial group use regulation applies only to groups with some higher level of internal organizational structure because it imposes vicarious and "group liability" for the actions of individual members. Plaintiffs base their "group liability" claim on the stated purpose of the regulation: "to ensure that a group will be responsible for the actions of its members as a whole." *Final Rule,* 60 Fed.Reg. 45,274. Therefore, plaintiffs interpret the definition of "group use" to apply only to organizations with sufficient internal structure to legitimately bear the "group liability" created by the noncommercial group use regulation. Because the Rainbow Family is nothing more than a temporary collection of gatherers which allegedly lacks an on-going central leadership, plaintiffs claim that the regulation does not apply to Rainbow Gatherings.

■ Taking all of the facts in the complaint as true, this court is of the opinion that plaintiffs' first count must be dismissed because the definition of "group use" clearly includes Rainbow Gatherings. First, in the definition of "group use," the term "group" has its common meaning and includes the Rainbow Gatherings. Courts must interpret statutes to give each word some operative effect, and undefined terms have their ordinary, contemporary, and common meaning unless there is an indication of an alternative meaning. *Walters v. Metropolitan Educational Enterprises, Inc.,* 519 U.S. 202, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997). In this case, the term "group" is not defined within the regulation definition of "group use." In the regulation, "group" refers to some collection of individual people, and there is no indication that "group" has any meaning other than the common meaning: an assemblage of persons located or gathered together or considered together because of some similarities. *See Webster's II New Riverside University Dictionary* 551, definitions 1 and 3 (1984).

■ This court concludes that a reading of "group" with its common meaning does not deprive the term of any operative effect within the regulation. Rather, it operates to restrict the phrase "75 or more people" to such people that are gathered or considered together because of some similarities. According to the complaint, individual Rainbow Family members gather for common purposes (prayer, discussion of political and social concerns, expression of ideas and views) at a preappointed time (on and around July 4 for the past 26 years) and place (a predeter-

mined site within the National Forest System) with some members contacting the community beforehand to prepare for an influx of 20,000 or more Rainbow gatherers. Complaint ¶¶ 15–17. Such a gathering of individuals is clearly within the regulation's definition of "group use." Furthermore, when interpreting a regulation, the court notes that it must follow the intent of the legislative body. *See Morales v. TWA, Inc.*, 504 U.S. 374, 419, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). In promulgating this regulation, the Forest Service intended it to apply to group events such as Rainbow Gatherings. *Final Rule*, 60 Fed.Reg. at 45,258–93 (discussing how the noncommercial group use regulation would apply to Rainbow Family Gatherings).

Second, the Rainbow Family does not escape the noncommercial group use regulation simply because it chooses not to establish "sufficient internal structure to bind its members and to be legally liable for their actions or omissions." Complaint ¶ 31. This court is of the opinion that the level of "internal structure" within a particular group is irrelevant with respect to whether or not it is a "group" under the regulation. The regulation seeks to establish a permit requirement for large noncommercial groups, regardless of whether or not it is incorporated, registered, or has on-going central leadership. The only requirement the regulation sets forth is the size of the group, 75 or more individuals. Finally, this court is of the opinion that plaintiffs claim of unconstitutional "group liability" is better examined in count 2 below. Therefore, this court rules that count one of plaintiffs' complaint fails to state a claim because Rainbow Gatherings fall within the regulation's meaning of "group use." Accordingly, defendants' motion to dismiss count one of plaintiffs' second amended complaint is granted.

### B. Time, place, and manner restrictions

■ Plaintiffs next claim that the noncommercial group use regulation is an unconstitutional time, place, and manner restriction on their First Amendment freedom of speech rights. Plaintiffs speech is presump-

tively protected because Rainbow Gatherings are held on National Forest System lands, which have historically provided a public forum for expression. *See Hague v. Committee for Indus. Org.*, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Time, place, and manner restrictions on presumptively protected speech are valid only if the government can prove that they are content neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The government is not required to adopt the least restrictive time, place, and manner regulation, as long as the restrictions adopted are not substantially overbroad or burdensome; it is immaterial that the government's interests would be served by some less-speech-restrictive alternative. *Id.* at 799–800, 109 S.Ct. 2746.

■ Plaintiffs' complaint alleges that the signature requirement of the challenged regulation fails the narrowly tailored test because it is overly broad and serves an illegitimate government purpose: "imposition of additional restrictions, limitations, or requirements not otherwise imposed or authorized by law." Complaint ¶ 37. Specifically, plaintiffs claim that the regulation holds the group as a whole liable for the actions of individual members. Plaintiffs claim that each of the government's interests could be served by other regulations or procedures that would not impose "group liability."

This court is of the opinion that the regulation is valid because it is content neutral, is narrowly tailored to serve a significant government interest, and leaves open ample alternatives for expression. On its face, the noncommercial group use regulation is neutral and applies equally to all noncommercial groups of 75 or more individuals. The regulation's neutrality is further demonstrated by the stated purposes of the regulation, which are to protect forest resources, promote safety and health of forest users, and allocate space among competing uses. *Final Rule*, 60 Fed.Reg. at 45,258–93. Each of these interests is substantial and is unrelated to the expressive content of any activity that

might take place pursuant to the noncommercial group use regulation. Furthermore, the signature requirement operates to deter false statements on the application and permit, and to subject the group to the permit's terms and conditions. The imposition of "group liability" is not an illegitimate purpose, rather this court finds that it is a legitimate means to achieve the substantially important purposes stated in the regulation. Therefore, the imposition of "group liability" is a substantially justified time, place, and manner restriction.

In addition, the regulation leaves ample alternatives for expression. The regulation does not affect gathering in groups of less than 75 or gathering on non-National Forest System land, and if a permit is not granted, the Forest Service is required to offer an alternative time, place, or manner if one is available. 36 C.F.R. § 251.54(h)(2). Finally, because the burden imposed on expression by the regulation is not *substantially* greater than a burden imposed by alternative regulations, it is irrelevant that the alternatives to this regulation might equally serve the government's interests. Accordingly, this court grants defendants' motion to dismiss count two of plaintiffs' second amended complaint.

### C. Prior restraint

■ Plaintiffs' third count claims that the noncommercial group use regulation is an unconstitutional prior restraint on their First Amendment freedom of speech. As explained above, plaintiffs' speech is presumptively protected, therefore, prior restraints are constitutional only if they contain express substantive and procedural standards for the authorizing official to apply. *Ward,* 491 U.S. at 801, 109 S.Ct. 2746. First, plaintiffs argue that the regulation delegates unbridled discretion to the permitting official because it does not set standards for granting or denying permits, or standards for the type of terms and conditions the permit may contain. Second, plaintiffs claim that the regulation improperly requires the permit applicant to seek judicial review of a permit denial. 36 C.F.R. § 251.54(h)(2). Plaintiffs argue that the Forest Service, not the applicant, bears the burden of justifying any administrative

denial of a permit by going to court to restrain the planned expression. *Freedman v. State of Maryland,* 380 U.S. 51, 58–59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

This court disagrees and is of the opinion that the regulation is not an unconstitutional prior restraint. First, the regulation contains sufficient limitations on the permitting official's discretion. A permitting officer's reasons for granting and denying a permit are established by 36 C.F.R. § 251.54(h). An application for a noncommercial group use permit must be granted unless the proposed activity: (i) is prohibited by 36 C.F.R. part 261, subparts A or B; (ii) the proposed activity is inconsistent with the applicable forest land and resource management plan required by 36 C.F.R. part 219; (iii) will materially impact sensitive resources or lands identified in Forest Service Handbook 1909.15, chapter 30; (iv) will delay, halt, or prevent administrative use of an area by the Forest Service or other scheduled or existing uses; (v) violates state and local public health codes; (vi) poses a substantial danger to public safety; (vii) involves non-federally funded paramilitary training or exercises; or (viii) a person 21 years of age or older has not signed the permit on behalf of the applicant. 36 C.F.R. § 251.54(h)(1). Furthermore, terms and conditions that the Forest Service may impose in a permit are limited to those designed to assure compliance with otherwise applicable health and safety standards; to minimize damage to water quality, fish, wildlife, and other environmental aspects of the forests; and to protect the physical safety of all those in the National Forest System. *See* 36 C.F.R. § 251.56(a).

Second, the regulation need not require the Forest Service to go to court to enforce its denial of a permit application. Plaintiffs' reliance on *Freedman* is entirely misplaced. In *Freedman,* the State Board of Censors passed judgment on the content of any protected speech in a movie. *Freedman,* 380 U.S. at 52, 85 S.Ct. 734. Therefore, the Court required the censor to go to court to justify its decision to restrain a movie distributor from showing a particular movie. *Id.* at 60, 85 S.Ct. 734. In contrast, in the present case, the permitting official's decision is not

based on an evaluation of the content of the applicant's speech, but rather a defined list of content neutral requirements. *See* 36 C.F.R. § 251.54(h). Therefore, the regulation properly requires the applicant, and not the Forest Service, to seek judicial review. Taking all facts alleged in the complaint as true, plaintiffs fail to state a claim on this ground. Therefore, defendants' motion to dismiss count three is granted.

### D. Strict scrutiny because of Forest Service's motive

 Plaintiffs also claim that the noncommercial group use regulation is subject to "strict scrutiny" because it was specifically aimed at Rainbow Gatherings. As described above, Rainbow Gatherings are presumptively protected free speech. A regulation that restricts the time, place, and manner of a form of protected speech is usually subject to "intermediate scrutiny." *See Ward,* 491 U.S. at 796–802, 109 S.Ct. 2746. However, a regulation that restricts the First Amendment freedoms of a specific group is subject to the more demanding standard of "strict scrutiny" if the government has targeted the group because of its message or the identity of the speakers. *Turner Broadcasting System, Inc. v. F.C.C.,* 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). Official motive is irrelevant in the context of challenges to facially neutral laws that are justified without reference to the content of the speech. *See Foti v. City of Menlo Park,* 146 F.3d 629, 634 (9th Cir.1998); *United States v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (the Court "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive"). The principal inquiry in determining the content neutrality of time, place, and manner restrictions is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward,* 491 U.S. at 791, 109 S.Ct. 2746. A regulation that "serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.*

 Plaintiffs' second amended complaint alleges that the noncommercial group use regulation is unconstitutionally targeted at Rainbow gatherers, including plaintiffs. Plaintiffs allege that the Forest Service disfavors Rainbow gatherers because gatherers express views which are opposed by the Forest Service and gatherers have succeeded in invalidating Forest Service regulations. Plaintiffs claim that the Forest Service promulgated the noncommercial group use regulation because it knew Rainbow gatherers would not be able to meet the requirements that the regulation imposes.

Taking all facts alleged in the complaint as true, this court concludes that even if the Forest Service's motive in adopting the regulation was animus towards Rainbow gatherers or their message, the regulation is not subject to strict scrutiny because it is facially neutral and justified without reference to the content of speech. On its face, the noncommercial group use regulation is neutral and applies equally to all noncommercial groups of over 75 individuals. 36 C.F.R. § 251.51. The regulation's neutrality is further demonstrated by the preamble which states that the regulation was designed to protect forest resources, promote health and safety of forest users, and allocate space among competing uses. *Final Rule,* 60 Fed.Reg. at 45,258–93. Each of these interests is unrelated to the expressive content of any activity that might take place pursuant to the noncommercial group use regulation. Finally, plaintiffs' allegation that the regulation has an incidental effect on their speech but not on the speech of others is immaterial. Simply because plaintiffs feel unable to meet the regulation's signature requirement, but other groups are willing to choose someone to sign will not subject the regulation to strict scrutiny. The regulation imposes the signature requirement equally upon all applicants, regardless of the content of their speech. Therefore, this court need not apply a strict scrutiny standard to its analysis in this case. Accordingly, defendants' motion to dismiss count four is granted.

### E. Administrative Procedure Act notice of rulemaking

 Finally, plaintiffs claim that the noncommercial use regulation was invalidly pro-

mulgated under the APA because there was insufficient notice of rulemaking. The challenged regulation was promulgated pursuant to the APA process which requires public notice of proposed rules and opportunity for public comment. 5 U.S.C. § 553(b). APA notice and comment rulemaking requires that the notice include "a statement of the time, place, and nature of public rulemaking proceedings," "reference to legal authority under which the rule is proposed," and "either the terms or substance of the proposed rule or a description of the subjects and issues involved." *Id.* The notice should be sufficiently descriptive of the "subjects and issues involved" so that interested parties may offer informed criticism and comments. *See e.g., Portland Cement Ass'n v. Ruckelshaus,* 486 F.2d 375, 392–394 (D.C.Cir.1973), *cert. denied,* 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974). The publication of notice provides the public with a meaningful opportunity to comment on proposed regulations and a basis for judicial review. *Florida Power & Light Co. v. United States,* 846 F.2d 765, 771 (D.C.Cir.1988) *cert. denied,* 490 U.S. 1045, 109 S.Ct. 1952, 104 L.Ed.2d 422 (1989); *Union Oil Co. of California v. Federal Power Comm'n,* 542 F.2d 1036, 1041 (9th Cir.1976).

■ In the present case, the complaint alleges that the Forest Service was also "required to include, reveal, or refer to information not generally published but known to it which directly bears upon the proposed regulation and which would be useful to those who comment on the proposed rules." Complaint ¶ 55. Plaintiffs claim that the notice was insufficient because the Forest Service failed to include, reveal, or refer to so-called "Rainbow Reports" in the notice of proposed rulemaking published in the Federal Register. *See* 58 Fed.Reg. 26,940–44 (May 6, 1993). Plaintiffs claim that the government relied upon data regarding past Rainbow Gatherings which it had collected in the form of "Rainbow Reports" which were not known to the general public or to many who commented on the proposed regulation. Plaintiffs argue that the Forest Service failed to disclose basic data and other information sufficient to enable an interested or affected person to comment intelligently on its proposals. *Washington Trollers Ass'n v. Kreps,*

645 F.2d 684, 686 (9th Cir.1981). Therefore, plaintiffs claim that people who commented on the proposed regulation were deprived of the full benefits of the APA's notice and comment procedures.

■ This court disagrees and is of the opinion that the Forest Service provided sufficient notice to satisfy the statutory requirements of 5 U.S.C. § 553(b). In addition, this court concludes that the Forest Service provided the public with a sufficient basis to comment. The seven page notice was published in the Federal Register and included the nature, legal authority, terms, and substance of the proposed rule. Specifically, it included a summary for the proposed rule; an address where comments could be sent and a deadline for those comments; the name and address of two contacts who could provide further information and copies of relevant documents upon request; background information; and a section-by-section analysis. *See* 58 Fed.Reg. 26,940–44 (May 6, 1993). While the APA does impose a duty on federal agencies to reveal the basic reason for a proposed rule, it does not require federal agencies to notify the public of the existence of any specific documents in a Federal Register notice of proposed rule. *See B.F. Goodrich Co. v. Dept. of Transp.,* 541 F.2d 1178, 1184 (6th Cir.1976) ("The Administrative Procedure Act does not require that every bit of background information used by an administrative agency be published for public comment.... The basic data upon which the agency relied in formulating the regulation was available to petitioners for comment"), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 773 (1977). Similarly, in the present case, the Forest Service included sufficient information in the published notice to allow meaningful public comment. Therefore, plaintiffs fail to state a claim because the agency did not have the duty to publish the so-called "Rainbow Reports," but merely the duty to provide sufficient notice to allow meaningful comment. Accordingly, this court dismisses count five.

## V. CONCLUSION

For the reasons stated above, it is

**ORDERED** that defendants' motion to dismiss (doc. # 19) is GRANTED with respect to all counts contained in plaintiffs' second amended complaint; and it is

**FURTHER ORDERED** that the oral argument scheduled for September 14, 1998, at 1:30 P.M. be stricken from the calendar.

**IT IS SO ORDERED**