CONTINENTAL OIL COMPANY, the Superior Oil Company, Mitchell Energy Corporation, and Mapco Inc., Petitioners,

v.

FEDERAL POWER COMMISSION, Respondent.

Nos. 75–1496, 75–1748, 75–1498, 75–1740, 75–1519, 75–1765 and 75–2232.

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1975.

**32**

Tom Burton, Houston, Tex., for petitioners in No. 75–1496.

W. B. Wagner, Jr., Pat F. Timmons, Houston, Tex., for petitioners in Nos. 75–1740 and 75–1498.

Homer J. Penn, Houston, Tex., for petitioners in Nos. 75–1765 and 75–1519.

Joseph C. Johnson, Tom Burton, Houston, Tex., for petitioners in No. 75–1748.

William W. Ross, Toni K. Golden, Washington, D. C., Eugene G. Bell,

Royse M. Parr, Tulsa, Okl., for petitioners in No. 75–2232.

Kirk W. Weinert, C. Fielding Early, Jr., Roger L. Brandt, Houston, Tex., for intervenor Texaco, Inc.

George C. Bond, Kenneth L. Riedman, Jr., Los Angeles, Cal., Platt W. Davis, III, Washington, D. C., for intervenor Union Oil Co.

Frank P. Saponaro, Jr., Washington, D. C., for Mitchell Energy Corp.

Leo E. Forquer, Gen. Counsel, George W. McHenry, Jr., Sol., Thomas M. Walsh, Atty., Federal Power Com'n, Washington, D. C., for respondent in No. 75–1496.

Drexel D. Journey, Gen. Counsel, George W. McHenry, Jr., Sol., Federal Power Com'n, Washington, D. C., for respondent in Nos. 75–1740, 75–1765, 75–1748 and 75–2232.

Leo E. Forquer, Gen. Counsel, George W. McHenry, Jr., Sol., Federal Power Com'n, Washington, D. C., for respondent in Nos. 75–1498 and 75–1519.

Before BELL, CLARK and RONEY, Circuit Judges:

CLARK, Circuit Judge:

Acting under its rulemaking power and after notice, the Federal Power Commission (FPC) issued Order No. 521, requiring disclosure by interstate natural gas companies of detailed intrastate sales information, including the names of purchasers, date and location of the sale, pressure base, annual sales volume and price terms.[1] Four natural gas companies[2] petition for review of the order.

1. Order No. 521 issued January 9, 1975 is entitled *Order Establishing Data Collection System to Investigate Rates Charged for Nonjurisdictional Sales of Natural Gas by Natural Gas Companies Subject to the Jurisdiction of the Federal Power Commission.* Also under review are subsequent orders, issued in response to the petitions of several parties for rehearing, No. 521–A, *Order Denying Stay and Maintaining Non-public Status of Data Pending Rehearing,* (issued February 19, 1975) and Order No. 521–B, *Order Clarifying Order No. 521*

*and Denying Rehearing,* (issued March 17, 1975). These orders will be referred to collectively as "the order."

2. The petitioners in these consolidated causes are The Superior Oil Company, Continental Oil Company, Mitchell Energy Corporation and Mapco, Inc. Intervention by Union Oil Company of California and Texaco, Inc. was allowed by this court. We also granted a stay of the order pending completion of this proceeding.

While acknowledging that their interstate gas sales are subject to FPC regulation, petitioners challenge the Commission's authority to obtain such intrastate sales information. Alternatively they assert that if such authority exists, the information they file cannot be made public under the Freedom of Information Act (FOIA). We hold that the Commission can require regulated companies to furnish information about their unregulatable intrastate activity to facilitate the discharge of the agency's duty, but that public disclosure of the information acquired goes too far. We vacate the requirement of public disclosure.

## I. AUTHORITY OF FPC

The attack on the authority of the FPC to order disclosure of information relating to intrastate sales of natural gas is based on language expressly excluding such sales from regulation under the Natural Gas Act. Section 1(b) of the Act[3] states:

> The provisions of this Act shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.

■ The Supreme Court said in *Panhandle Eastern Pipe Line Co. v. Public Service Commission of Indiana*, 332 U.S. 507, 516, 68 S.Ct. 190, 194, 92 L.Ed. 128 (1947): "Three things and three only

Congress drew within its own regulatory power delegated by the Act to its agent, the Federal Power Commission. These were: (1) the transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale." Clearly, the FPC has jurisdiction over the petitioners here under the third category. Their argument that the FPC's jurisdiction over them cannot extend beyond interstate activity is without merit. Interstate rates must be fixed with a clear view of the prices and terms prevailing in the intrastate market. The two markets compete for natural gas which is in short supply. Those regulating the public interstate market must know the private intrastate price structure if their regulations are to function effectively. Moreover, the mere disclosure of details of intrastate sales of natural gas is not regulation of nonjurisdictional sales. The acquisition of sales and pricing information *per se* (*see* Part II *infra*) has not been shown to have any potential impact on intrastate sales.

■ Sections 4, 5 and 7 of the Act[4] authorize the FPC to oversee the justness and reasonableness of interstate rates and to assure continued, reliable service. Section 14(a)[5] authorizes the FPC to conduct investigations to aid in enforcement of the Act. The investigation of intrastate market conditions contemplated by the order is within the ambit of this authority, because the information is essential to effective ratemaking. Other provisions of the Act provide additional and complementary authority. Section 5(b)[6] allows the Commission to investigate and determine the cost of production or transportation of natural gas even where it has no authority to set

---

3. 15 U.S.C. § 717(b).

4. 15 U.S.C. §§ 717c, 717d and 717f.

5. 15 U.S.C. § 717m(a) provides in pertinent part that,

> "[t]he Commission may investigate any facts, conditions, practices, or matters which it may find necessary or proper in order to determine whether any person has violated or is about to violate any provision of this

chapter or any rule, regulation, or order thereunder, or to aid in the enforcement of the provisions of this chapter or in prescribing rules or regulations thereunder, or in obtaining information to serve as a basis for recommending further legislation to the Congress."

6. 15 U.S.C. § 717d(b).

rates. Section 8 [7] is directed to keeping accounts, records and memoranda of companies subject to the FPC's jurisdiction; Section 10 [8] covers periodic and special reports by natural gas companies. Section 15 [9] provides for establishment of formal hearings and investigations. Section 16 [10] is a general provision giving the Commission power to perform any and all acts and to make such orders, rules and regulations as may be necessary or appropriate to carry out the provisions of the Act.

Order No. 521 finds that the information sought is vital to effective administration of the Natural Gas Act and that it will serve a regulatory need, especially with regard to rate making responsibilities in this language: "Because of the existing gas shortage and the current national energy crisis, it is imperative that the Commission have current information concerning sales of natural gas which are not subject to its ratemaking jurisdiction in order that it may formulate adequate policies concerning sales of natural gas in interstate commerce and for other regulatory purposes." The order also takes note of the following matters. Intrastate rates for new gas are increasing rapidly, thus making a scarce commodity even scarcer in the interstate market and compounding the difficulty interstate pipelines have experienced in contracting for needed supplies. No federal or state agency now collects intrastate sales information on a comprehensive basis. A continuing source of reliable information on intrastate sales will assist the FPC in review of limited term and emergency sales and enable it to set rates that are adequate to secure the needed supplies now and in the future.

■ The petitioners assert additionally that the specific grant of power to investigate and determine costs of production and transportation of gas which cannot be regulated under § 5(b), reflects a Congressional intent to limit the FPC's inquiries into nonjurisdictional sales of jurisdictional companies to such cost considerations. We disagree. As stated above, rather than limiting the FPC investigative and fact-gathering function, this section provides collateral support to the FPC's § 14(a) authority to enter the order here on review. It has been recognized that noncost factors may be considered in setting rates, *see Permian Basin Area Rate Cases,* 390 U.S. 747, 815, 88 S.Ct. 1344, 1385, 20 L.Ed.2d 312 (1968), and *Panhandle Eastern Pipe Line Co. v. F. P. C.,* 324 U.S. 635, 65 S.Ct. 821, 89 L.Ed. 1241 (1945). If the FPC lacked the ability to investigate any intrastate sales factor other than costs incurred by companies within its jurisdiction, this duty could not be accomplished.

■ In past years the FPC has recommended to Congress that its investigatory powers under § 14 be enlarged to include powers similar to those given it under § 311 of the Federal Power Act.[11] Petitioners contend this is an admission that it lacks authority to pass the instant order. It is not. Section 311 allows the FPC to investigate nonjurisdictional sales of nonjurisdictional companies. Order No. 521 is solely directed to companies which are clearly subject to FPC jurisdiction. We likewise refuse to attach significance to the failure of the FPC to exercise this power previously. The present shortage of natural gas is unique. The only deduction we make from the fact that this order is novel is that the FPC has not found it imperative to correlate intrastate sales to interstate ratemaking until now. Finally, we reject the contention that the data to be acquired will not be reliable because small companies are exempted. This is a matter within FPC discretion.

## II. PUBLIC DISCLOSURE

Alternatively, the petitioners maintain that the information should not be made

---

7. 15 U.S.C. § 717g.

8. 15 U.S.C. § 717i.

9. 15 U.S.C. § 717n.

10. 15 U.S.C. § 717o.

11. 16 U.S.C. § 825j.

public. The thrust of their argument is that this information comes within the "trade secrets" exception to the Freedom of Information Act, (FOIA) which provides: "(b) This section does not apply to matters that are—. . . (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential . . . ." [12]

██ *National Parks and Conservation Association v. Morton,* 162 U.S.App. D.C. 223, 498 F.2d 765 (1974) aids in interpreting this section. "In order to bring a matter (other than a trade secret) within this exemption, it must be shown that the information is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential." 498 F.2d at 766. For the purposes of the FOIA, a corporation comes within the definition of person,[13] and since the information is commercial or financial, the dispute comes down to whether the information is confidential. "[C]ommercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Goverment's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks and Conservation Ass'n v. Morton,* 498 F.2d at 770.

The information to be furnished is detailed—a contract by contract, field by field exposition of the petitioners' product marketing. Prices, names of purchasers, terms and times of price renegotiation must be disclosed. The likelihood that delivery of these intimate facts to petitioners' competitors would be harmful is apparent. Not only could it affect sales by enabling competitors to learn contract termination dates but it also affects product acquisition. Natural gas companies lease drilling and exploration rights from owners of mineral rights. The latest leasing innovation is the "market value" lease, under which the royalty payment to a mineral lessor is based on market value of the gas rather than the proceeds of every specific sale. Disclosure of individual field prices will disrupt lessor-lessee relationships where the market value is less than the highest price reported in the area. The compilation and disclosure to petitioners' competitors, purchasers and suppliers of information as to extent of supply and competitive prices in each market area would alter industry custom and existing relationships to the disadvantage of petitioners' competitive positions.

The FPC maintains that the information is not confidential. They point to the fact that at least one state requires public disclosure of data of the type required and that many newspapers and trade journals publish intrastate sales information. This proof falls short of carrying the contention that the broad reach of Order No. 521 is harmless to the business interests of those it affects. If what must be revealed is already available from other sources, the order would be of questionable validity.

██ The FPC urges that the exemption means no more than that an agency cannot be compelled to release confidential information, and does not command that they must withhold it. We hold, without reaching any situation broader than that presented, that this contention is without merit here. *National Parks and Conservation Ass'n v. Morton* decided that even where an agency had no interest in keeping submitted information secret, "[t]he exemption may be invoked for the benefit of the person who has provided commercial or financial information if it can be shown that public disclosure is likely to cause substantial harm to his competitive position." 498 F.2d at 770.[14]

12. 5 U.S.C. § 552(b)(4).

13. 5 U.S.C. § 551(2).

14. We pretermit as unnecessary determinations of the petitioners' further arguments against disclosure: (1) that disclosure would be a taking of proprietary interests in violation of the Fifth Amendment, and (2) that submission of the information would cause petitioners to violate the antitrust laws.

This is not to say, however, that the information gathered must be kept from the public altogether. Only confidential information is protected. To the extent that confidentiality can be secured by composite disclosure and by deletion of the filing party's name and other identifying characteristics, petitioners do not dispute its release. *See National Cable Television Ass'n, Inc. v. FCC,* 156 U.S.App.D.C. 91, 479 F.2d 183, 195 (1973). The only requirement in today's case is that the rights of those required to divulge be protected. In *Evans v. Dept. of Transportation,* 446 F.2d 821 (5th Cir. 1971), we explained the necessity of balancing public and private interests in interpreting the FOIA. Assurance as to accuracy in the determination of volume and pricing of intrastate sales, not the identity of the parties to each such transaction, is the critical public factor. An impersonal disclosure of the data filed will protect both interests. We leave to FPC discretion the details of implementing public disclosure which will accord with these views.

We affirm the portion of Order No. 521 which requires jurisdictional companies to disclose fully their intrastate natural gas transactions to the FPC. We vacate that portion of the order which would make public all details of such information furnished by petitioners. The stay order previously entered is vacated.