ASHLAND EXPLORATION,
INC., Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

No. 79–1102.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 12, 1980.

Decided Sept. 2, 1980.

---

Bernard A. Foster, III, Washington, D. C., with whom Phyllis C. Rainey, Houston, Tex., for intervenor, Tema Oil Company, and Richard F. Generelly, Washington, D. C., for petitioner, Ashland Exploration, were on the brief and presented argument for both parties. John H. Burnes, Jr., Washington, D. C., also entered an appearance for petitioner.

Kristina Nygaard, Atty., Federal Energy Regulatory Commission, Washington, D. C., for respondent.

Henry E. Brown, Colorado Springs, Colo., also entered an appearance for intervenor, Colorado Interstate Gas Company.

Alfred O. Holl and John H. Cary, Oklahoma City, Okl., also entered appearances for intervenor, Cities Service Gas Company.

Before TAMM and MIKVA, Circuit Judges, and GESELL,* United States District Court Judge for the District of Columbia.

Opinion PER CURIAM.

PER CURIAM:

In the argot of natural gas regulation, a contract for the sale of natural gas "rolls over" when it expires and is replaced by another contract for the same supply of gas. Under current regulations of the Federal

---

* Sitting by designation pursuant to 28 U.S.C.A. § 292(a).

Energy Regulatory Commission (FERC), 18 C.F.R. § 2.56a(a)(5) (1979), sellers of flowing natural gas may charge higher rates if the gas is sold under a contract that has "rolled over" on or after the specified date of January 1, 1973. The Commission's current rollover rule has already been approved by this court, *American Public Gas Ass'n v. FPC*, 567 F.2d 1016, 1057–61 (D.C. Cir. 1977), *cert. denied* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978), and the only issue to be decided here concerns how it should be applied. The Commission, in this case, denied the benefit of rollover treatment to petitioner Ashland Exploration, Inc. (Ashland) on the ground that the contracts in question did not qualify under the terms of the regulation as construed by the Commission. Because the Commission's interpretation of its own regulation is clearly within reasonable bounds, its order is affirmed.

## I. BACKGROUND

### A. Regulatory Context

For some time before promulgating the regulation at issue here, the Commission had operated a two–tier pricing system for natural gas sold in interstate commerce. Under that system, the maximum price for which regulated gas could be sold depended on its "vintage." Gas sold pursuant to a contract entered into *before* a specified "division date" was "old" and was distinguished for regulatory purposes from gas that had not been sold in the interstate

market until *after* the specified "division date." That gas was regarded as "new." The ceiling price for "new" gas was higher than that for "old" gas, presumably to cover the higher production cost and to encourage new exploration.

In time, the Commission came to be dissatisfied with its two–tier system because it was not providing sufficient economic incentives to assure adequate supply. Accordingly, the Commission embarked on a new course, intended to phase out vintaging by allowing "old" gas to qualify for the higher ceiling price afforded "new" gas when the original "old"–gas contract "rolled over." Between 1972 and 1976, this new policy was successively refined.[1] The ultimate rollover rule, now codified at 18 C.F.R. § 2.56a(a)(5) (1979), reads as follows:

> Sales of natural gas in interstate commerce for resale may be made at [the national rate for "new" gas], provided the sale is made pursuant to (i) a replacement contract where the sale was formerly made pursuant to a permanent certificate of unlimited duration under such prior contract which expired by its own term [*sic*] on or after January 1, 1973, or pursuant to a contract executed on or after January 1, 1973, where the prior contract expired by its own terms prior to January 1, 1973 . . . .

Except for slight variations in wording not relevant here, this rule was in effect throughout the proceedings now under review.

---

1. The Commission's rollover rule was formulated and successively reformulated in the following three opinions:

    (1) Opinion No. 639, *Area Rates for Appalachian and Illinois Basin Areas*, 48 F.P.C. 1299 (1972), *reh. denied*, Opinion No. 639–A, 49 F.P.C. 361 (1973), aff'd sub nom. *Shell Oil Co. v. FPC*, 491 F.2d 82 (5th Cir. 1974); (2) Opinion No. 699, *Just and Reasonable National Rates for Sales of Natural Gas*, 51 F.P.C. 2212, *modified*, Opinion No. 699–A, 52 F.P.C. 263, *modified*, Opinion No. 699–H, 52 F.P.C. 1604 (1974), *aff'd sub nom. Shell Oil Co. v. FPC*, 520 F.2d 1061 (5th Cir. 1975), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2661, 49 L.Ed.2d 394 (1976); (3) Opinion No. 770, *Uniform National Rates for Sales of Natural Gas*, Docket No. RM75–14, 10 F.P.S. 5–293 (July 27, 1976), *modified*,

    Opinion No. 770–A, 10 F.P.S. 5–854 (Nov. 5, 1976), *aff'd sub nom. American Public Gas Ass'n v. FPC*, 567 F.2d 1016 (D.C. Cir. 1977), *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978).

    In its most recent promulgation of the national rate for natural gas–Opinions 770 & 770A, *supra* (codified at 18 C.F.R. § 2.56(a) (1979))–three different rates were established: one for sales from wells begun after January 1, 1975; a lower rate for gas dedicated to the interstate market between January 1, 1973 and December 31, 1974; and a lower rate still for gas sales pursuant to contracts that rolled over on or after January 1, 1973. It is only the third and lowest national rate that is applicable in this case. For the purposes of this opinion, therefore, the distinction between three vintages of "new" gas may be ignored.

As currently formulated, the rollover rule assumes that there is an original contract and a renewal contract which "replaces" it. If the original contract expires of its own terms before the cutoff date and is replaced by a renewal contract executed after the cutoff date or, alternatively, if the original contract expires of its own terms after the cutoff date (irrespective of when its replacement contract is executed), the higher, "new"–gas ceiling applies. The rollover rule, however, comes into play only when the original contract is of a fixed term. If the original contract is of an indeterminate duration–e. g., for as long as production from a given well is profitable–it will never be eligible for the "new"–gas rate. *See Austral Oil Co. v. FPC*, 560 F.2d 1262, 1267 (5th Cir. 1977).

The rollover rule as finally formulated does not explicitly address whether the parties to the original contract and the renewal contract must be the same. That is the nub of the current dispute.

### B. *The Contested Filings*

At issue here are two proposed rate increases filed by Ashland pursuant to the Commission's rollover rule. Although the particulars of each of the two filings differ, the general fact pattern is the same: Ashland's corporate predecessor entered into a fixed–term contract for sale of natural gas with an initial buyer. That contract expired of its own terms and was supplanted by a life–of–lease contract with a different buyer–all long before January 1, 1973. In the spring of 1976, Ashland and the second buyer modified the then–operative life–of–lease contract to permit rate increases up to the applicable national rate ceiling. Short-

ly after that, Ashland filed its proposed rate increase with the Commission claiming that rate increases were warranted under the rollover rule.[2]

In a letter order dated October 13, 1976, the Commission rejected these rate filings because "the original contracts *with the current purchasers* [had] not expired." Joint Appendix (J.A.) at 104 (emphasis added). Although acknowledging that the current contracts superceded fixed–term contracts that had expired of their own terms, the Commission said that this was "of no significance" because those contracts had "covered sales to different buyers." *Id.* Therefore, the Commission concluded, the proposed rate increases were "not acceptable under the vintaging concepts" it had previously established. *Id.*

On consideration of Ashland's petition for rehearing the Commission reaffirmed its earlier order. It noted that the rollover rule as initially formulated in 1972 spoke of "the 'purchaser and seller' entering into a new contract" to replace the original fixed–term contract. J.A. at 114. Thus, the Commission explained, the rollover policy was always intended to apply only when the seller has renewed a gas–sale contract with the same buyer. Reading an identity–of–purchaser qualification into the current version of the rule, the Commission concluded that the "original contracts" for rollover purposes in this case were the life–of–lease contracts with the second buyers. Because those contracts were not of a fixed term, the rollover rule did not apply.[3]

## II. THE PROPRIETY OF THE COMMISSION'S INTERPRETATION

■ It is a basic tenet of administrative law that administrative agencies are enti-

---

**2.** The specifics of these two transactions are set forth in the Commission's unpublished order *Ashland Exploration, Inc.*, FERC Gas Rate Schedules Nos. 111 and 150 (Nov. 27, 1978), *reprinted in* Joint Appendix at 110.

**3.** The Commission may have misspoken when it said that life–of–lease contracts are "*never* entitled to rollover treatment." J.A. at 115 (emphasis added). It seems that the Commission does afford rollover treatment to life–of–lease contracts *if* they replace contracts of a fixed term. *See* Brief for Respondent FERC at

**11.** We assume, therefore, that the Commission meant only to note that a life–of–lease contract preceded by a fixed–term contract with different parties is no more entitled to rollover treatment than if it had not been preceded by a fixed–term contract at all. The authority of the Commission to exclude from rollover treatment contracts that were initially of an indeterminate term has previously been upheld. *Austral Oil Co. v. FPC*, 560 F.2d 1262 (5th Cir. 1977).

tled to wide latitude in interpreting their own regulations. As this court has recently said:

> When construction of an agency regulation is in issue, courts owe great deference to the interpretation adopted by the agency and will uphold that interpretation if it is reasonable and consistent with the regulation. The court need not find that the agency's construction is the only possible one, or even the one that the court would have adopted in the first instance.

*Belco Petroleum Corp. v. FERC*, 589 F.2d 680, 685 (D.C. Cir. 1978). As a general rule, the agency's interpretation is " 'of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

This is not the first time a Commission interpretation of its rollover rule has been challenged in court. In *Austral Oil Co. v. FPC*, 560 F.2d 1262 (5th Cir. 1977), the parties to a gas–sale contract that was originally open–ended agreed to a modification fixing an exact termination date. When the modified contract expired, rollover treatment was sought. The Commission concluded that rollover treatment was not proper because the contract *as originally written* was not of a fixed term. Even though the rule did not say that the original contract *as originally written* must be of a fixed term, the Commission's decision was sustained. The analogous result is mandated here.

In the case under review, the Commission interpreted its rollover rule as applying only when the purchaser under the original fixed–term contract and the purchaser under the replacement contract are the same. Objecting to this interpretation, the petitioner insists that no identity–of–purchaser requirement is included in the language of the rule itself. This is true but beside the point.

Under the petitioner's proffered interpretation of the rule, a subsequent contract "replaces" an earlier one if it is for sale of gas from the same acreage even though the purchasers may differ. But the Commission says a subsequent contract does not "replace" an earlier one unless the buyers and sellers are the same. The petitioner's interpretation of the rollover rule is plausible but not any more so than the Commission's. That being so, the Commission's interpretation must prevail. No matter how carefully an administrative rule is drawn, novel applications will be sought. The agency need not construe an ambiguous regulation in the way most favorable to an applicant.

█ To bolster its cause, petitioner contends that the Commission's interpretation of its rollover rule is not consistent with its stated policy objectives. This argument, however, misconstrues the scope of our review, which begins from the premise that a " 'presumption of validity . . . attaches to each exercise of the Commission's expertise,' " *Mobile Oil Corp. v. FPC*, 417 U.S. 283, 307, 94 S.Ct. 2328, 2345, 41 L.Ed.2d 72 (1974) (quoting *Permian Basin Area Rate Cases*, 390 U.S. 747, 767, 88 S.Ct. 1344, 1360, 20 L.Ed.2d 312 (1968)). For this reason, only if the Commission's interpretation were so at odds with its stated policy objectives as to render its determination irrational would this court set that order aside. *See Superior Oil Co. v. FERC*, 563 F.2d 191, 201–02 (5th Cir. 1977); *Transcontinental Gas Pipe Line Corp. v. FPC*, 518 F.2d 459, 465 (D.C. Cir. 1975); *Public Service Comm'n v. FPC*, 543 F.2d 757, 782 (D.C. Cir. 1974).

█ In developing its rollover policy, the Commission was striving for two goals: first, the eventual elimination of all vintaging and, second, the amelioration of economic dislocations caused by that change.[4] Accordingly, the Commission chose as its

---

4. *See* Opinion No. 770A, *supra* note 1, 10 F.P.S. at 5–873 to –875, slip op. at 20–21; Opinion No. 770, *supra* note 1, 10 F.P.S. at 5–301 to –305, slip op. at 12–16; Opinion No. 699–H, *supra* note 1, 52 F.P.C. at 1637–38 & n.118.

policy that vintaging be phased out, not eliminated immediately. This path between competing policy objectives–as one of those "'pragmatic adjustments which may be called for by particular circumstances,'" *Permian Basin Area Rates Cases, supra,* 390 U.S. at 777, 88 S.Ct. at 1365 (quoting *FPC v. Natural Gas Pipeline Co.,* 315 U.S. 575, 586, 62 S.Ct. 736, 743, 86 L.Ed. 1037 (1942))–is clearly within the province of the Commission, which "'must be free . . . to devise methods of regulation capable of equitably reconciling diverse and conflicting interests,'" *Mobile Oil Corp. v. FPC, supra,* 417 U.S. at 331, 94 S.Ct. at 2356 (quoting *Permian Basin Rate Area Cases, supra,* 390 U.S. at 767, 88 S.Ct. at 1360). The current regulation, which affords rollover treatment to fixed–term contracts but not those of an indeterminate term, is one way the Commission can carry out its policy. *Austral Oil, supra,* 560 F.2d at 1265–66; cf. *American Public Gas Ass'n v. FPC, supra,* 567 F.2d at 1061 n.91 (upholding Commission's denial of rollover benefit to indefinite term contracts in effect for 20 or more years). Having made that initial policy choice, the Commission may employ any regulatory interpretation conducive to its achievement. *Austral Oil, supra,* 560 F.2d at 1266.

If it had allowed life–of–lease contracts preceded by fixed–term contracts with other parties to qualify for rollover treatment, the Commission would have increased the number of contracts qualifying for the higher ceiling rate. This would have hastened the phase out of vintaging but, for that very reason, would have increased those economic dislocations to consumers that the Commission sought to ameliorate. It was not irrational for the Commission to decline to pursue this course. Accordingly, the petitioner's policy–related argument is without merit.

We have considered the other arguments advanced by petitioner and find them equally unpersuasive. For the foregoing reasons, the Commission's order is

*Affirmed.*