Mary Gladys BOWERS, et al., Plaintiffs,

v.

PHILLIPS PETROLEUM COMPANY, et al., Defendants.

Civ. A. No. CA-2-77-26.

United States District Court,
N. D. Texas,
Amarillo Division.

Dec. 7, 1981.

Howard F. Saunders, Ronald D. Nickum, Sanders, Saunders, Brian, Finney, Thomas & Smith, Amarillo, Tex., for plaintiffs.

Morris Harrell, Michael V. Powell, Rain, Harrell, Emery, Young & Doke, Dallas, Tex., Don L. Jemison, Phillips Petroleum Co., Corporate Legal Staff, Bartlesville, Okl., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY LOU ROBINSON, District Judge.

This action came on for trial by the Court without a jury on November 30, December 1 and December 2, 1981, in the United States District Court for the Northern District of Texas, Amarillo Division. Plaintiff lessors claim that defendant has failed to pay royalty based on the market value of gas sold as provided by certain oil and gas leases. The question before this Court is the proper method of determining the market value during the period between January 24, 1973, through December 31, 1980, of natural gas sold in the interstate market. After considering the evidence, pleadings and arguments of counsel, the Court does hereby make its Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The Court finds as facts, and incorporates herein by reference, Stipulations Nos. 1 through 18 of the parties, which are set forth in the Pre-Trial Order in this action.

2. In this action, the plaintiffs claim royalty interests under four Oil, Gas and Mineral Leases on lands in Hemphill County, Texas. Defendant Phillips Petroleum Company is holder of the leases.

3. The gas royalty clause of each of the Oil, Gas and Mineral Leases states in part:

"The royalties to be paid by Lessee are: * * * (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used off the premises or in the manufacture of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale...."

4. In February 1969, defendant Phillips Petroleum Company entered into a contract with Natural Gas Pipeline Company of America for sale of natural gas produced from certain lands, including the lands covered by the four Oil, Gas and Mineral Leases in question. The document marked as Exhibit H to the Stipulations is a true and correct copy of this contract.

The Gas Purchase Contract between defendant Phillips Petroleum Company and Natural Gas Pipeline Company of America, dated February 20, 1969 [Stipulated Exhibit H], has a term of twenty years from the date of first delivery of gas thereunder. The contract has not at any time at issue in this litigation expired by its own terms.

5. All of the wells at issue were commenced prior to January 1, 1973. Gas from these wells has been sold at all times pursuant to the contract marked as Exhibit H to the Stipulations. Each of these wells is located in the Hugoton-Anadarko area, and each well is located in the Washita Creek Gas Field, Texas Railroad Commission District 10.

6. Phillips Petroleum Company was not, at any time material to this action, a "small producer" as defined by FERC or its predecessor, the FPC.

7. The sale of natural gas produced from the lands of the plaintiffs during the periods in controversy by Phillips Petroleum Company to Natural Gas Pipeline Company

of America was a sale made off the leased premises, and was not a sale "at the wells." Thus, under the royalty clause, defendant is obligated to base its royalty payable to plaintiffs upon the market value at the well of the gas sold.

8. The volumes of gas produced and sold from the wells at issue during the period at issue are those volumes set forth in Column 3, Titled "Volumes-Sales" of Stipulated Exhibit J. The Btu content of the gas produced and sold from the wells at issue during the period at issue are those Btu figures set forth in Column 6 titled "Sales Btu/Cu. Ft." of Stipulated Exhibit J, for all wells except the Bowers B–1 and B–2A wells. For the Bowers B–1 and B–2A, the BTU Content is shown under the headings "Btu/Cu. Ft." (Columns 5 and 9) on Stipulated Exhibit K.

9. Defendant has made royalty payments to plaintiffs on the wells at issue, during the period at issue. These payments have been made on a monthly basis, by check, accompanied by a statement. Plaintiffs have deposited, or caused to be deposited, to their accounts all royalty payments tendered to them by Phillips for the gas at issue.

10. The royalties paid to plaintiffs by the Defendant Phillips Petroleum Company were calculated on the gas produced from the wells at issue, during the period at issue, at prices that equal or exceed the maximum lawful ceiling prices applicable to that gas, taking into account lawful adjustments. The applicable maximum lawful ceiling prices are those set forth below in the Conclusions of Law.

11. The Court finds, as a fact (as well as a conclusion of law as set forth hereinafter) that the "market value" of the gas at issue did not, and could not, exceed the maximum lawful ceiling prices applicable to that gas. The only sales comparable to the day to day deliveries of this gas would have to be at or below those maximum lawful ceiling prices. Regardless how those sales are averaged the resulting "market value" could not exceed the maximum lawful ceiling prices. The applicable maximum lawful ceiling prices are those set forth below in the Conclusions of Law.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1441. The Court has personal jurisdiction of all parties.

2. The test for determining the market value of gas sold on the interstate market has been described by the Fifth Circuit as follows:

> What would a willing seller and a willing buyer in a business which subjects them and the commodity to restriction and regulation, including a commitment for a long period of time, agree to take and pay with a reasonable expectation that the FPC [now the FERC] would approve the price (and price changes) and other terms and then issue the necessary certificate of public convenience and necessity.

*Kingery v. Continental Oil Company*, 626 F.2d 1261, 1264 (1980), *reh. denied*, 654 F.2d 721 (5th Cir. 1981) (table), *quoting Weymouth v. Colorado Interstate Gas Company*, 367 F.2d 84, 90 (5th Cir. 1966). The Supreme Court of Texas has recently described the same test as follows:

> Market value may be calculated by using comparable sales. Comparable sales of gas are those comparable in time, quality, quantity and availability of marketing outlets.
>
> ... Sales comparable in quality ... also involves the legal characteristics of the gas; that is, whether it is sold in a regulated or unregulated market, or in one particular category of a regulated market .... To be comparable, the sales must be made from an area with marketing outlets similar to the gas in question. Gas from fields with outlets to interstate markets only, for instance, would not be comparable to gas from a field with outlets only to the intrastate market.

*First National Bank in Weatherford v. Exxon Corp.*, 622 S.W.2d 80, 81 (Tex.1981), *quoting Exxon Corp. v. Middleton*, 613 S.W.2d 240, 247 (Tex.1981).

■ 3. Plaintiffs' market value gas royalty claim in this case is controlled by the opinions in *Kingery, supra,* and *First National Bank in Weatherford, supra.* The "market value" of the natural gas from the wells at issue, during the period at issue, could not have exceeded the maximum lawful ceiling prices established for that gas by the applicable orders of the Federal Power Commission (FPC), or after November 1, 1978, the Natural Gas Policy Act of 1978, 15 U.S.C. §§ 3301 *et seq.*

4. During the period January 24, 1973, through December 31, 1975, natural gas produced from the wells at issue was subject to FPC Opinion No. 586, codified at 18 C.F.R. § 154.106 (1980). Under Opinion No. 586, the ceiling price for the gas was that for gas produced in Texas, on or after July 1, 1972, from a reservoir other than the Panhandle and Hugoton Fields. This price was 20.00 cents per Mcf, plus or minus the lawful adjustments. 18 C.F.R. § 154.-106(c)(1)(ii)(b) (1980). During this period, the "market value" of the gas could not have exceeded this amount.

5. During the period January 1, 1976, through November 30, 1978, natural gas produced from the wells at issue was subject to FPC Opinion No. 749, as amended, codified at 18 C.F.R. § 2.56b (1981). Under Opinion No. 749, as amended, the ceiling price for the gas during the period January 1, 1976, through June 30, 1976, was 23.5 cents per Mcf, plus or minus the applicable adjustments to the base ceiling price. During the period July 1, 1976, through November 30, 1978, the ceiling price was 29.5 cents per Mcf, plus or minus the lawful adjustments. 18 C.F.R. § 256b(a) (1981). During these periods, the "market value" of the gas could not have exceeded these amounts.

6. During the period December 1, 1978, through December 31, 1980, natural gas produced from the wells at issue was subject to Section 104 of the Natural Gas Policy Act of 1978, 15 U.S.C. § 3314. The maximum lawful ceiling prices for the gas during this time period were those set forth in the regulations of FERC implementing Section 104, specifically the maximum lawful prices for Flowing Gas, Large Producer, set forth at Table II, 18 C.F.R. § 271.101. During this period, the "market value" of the gas could not have exceeded these amounts.

■■ 7. The Court specifically rejects plaintiffs' contention that the market value of the gas at issue may be determined by looking to sales of gas in the interstate market under "rollover" or "replacement" contracts. Before gas committed to interstate commerce may lawfully be sold for a "rollover" price, the contract to which that gas was previously committed must have expired by its own terms. *See, e. g.,* FPC Opinion 770, as amended, 18 C.F.R. § 2.56a(a)(5) (1981); 15 U.S.C. § 3301(12) (NGPA); *Ashland Exploration, Inc. v. FERC,* 631 F.2d 1018 (D.C.Cir.1980); *Austral Oil Co. v. FPC,* 560 F.2d 1262 (5th Cir. 1977). That condition is not met in this action. Sales under replacement or "rollover" contracts are not comparable to sales of the gas at issue.

8. It makes no difference whether the Court considers the plaintiffs' "rollover" or replacement contract contention under the language of *Kingery, supra,* or the language of *First National Bank in Weatherford, supra,* for the result is the same. Under the language of *Kingery,* a reasonable buyer and seller, acting in the interstate market, would not have at any time during the period at issue, agreed to buy and sell this gas at a "rollover" contract price with a reasonable expectation that the FPC or FERC would have approved that price. Even if one does assume this gas "free and available for sale," it was not "free and available" because the contract to which it was committed had not expired by its own terms, a necessary precondition to the gas being subject to a "rollover" price. Even if this gas had been "free and available for sale," it could not have been sold for a "rollover" price. Under the language of *First National Bank in Weatherford,* this gas is of a different legal quality than gas that was previously subject to an interstate contract that expired by its own terms. This gas and gas that may be sold for a

"rollover" contract price are in different categories of the regulated interstate market.

9. In *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 246 (Tex.1981), the court wrote that "[t]o determine the market value of gas, the gas should be valued as though it is free and available for sale." *Middleton* does not require or justify the assumption necessary to place the gas at issue in the "rollover" category of the interstate market, which is that the gas was subject to a prior interstate contract that expired by its own terms. The Court cannot assume that the gas at issue was subject to a prior contract that expired by its own terms because that assumption is directly contrary to the facts of this case.

10. The Court rejects plaintiffs' claim that defendant must pay royalty on the volume of gas as measured at the wellhead.

11. Plaintiffs have failed to prove that they are entitled to recover additional royalty from defendant. Plaintiffs have failed to prove that defendant has not paid a total royalty for the gas at issue that equals plaintiffs' royalty percentage times the volumes of gas sold times at least the maximum lawful ceiling price applicable to that gas.

12. Defendant Phillips Petroleum Company is entitled to judgment that plaintiffs Mary Gladys Bowers and Amarillo National Bank, as Independent Executors of the Estate of John Thomas Bowers, Deceased; Gladys Bowers, Individually; Gladys Bowers, as Trustee for John Thomas Bowers, Jr.; John Thomas Bowers, Jr., Individually; Loretta Cooper Bowers Hanson; Joseph Benjamin Bowers, Jr.; and James E. Bowers take nothing by this action and that all costs be taxed against plaintiffs.

13. Any finding of fact that should have been denominated a conclusion of law is hereby deemed a conclusion of law. Any conclusion of law that should have been denominated a finding of fact is hereby deemed a finding of fact.

LET JUDGMENT BE ENTERED ACCORDINGLY.